**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jose Omar Vasquez,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-15-0058-PHX-NVW (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 12, 2015 (Doc. 1). On May 1, 2015 Respondents filed their Limited Answer (Doc. 11), relying on the statute of limitations. Petitioner filed a Reply on May 18, 2015 (Doc. 13).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In his Opening Brief on direct appeal, Petitioner summarized the evidence presented by the prosecution as follows:

> The charges in this case arose from an encounter between Appellant and [MVM]. Appellant's brother, [EV] and [MVM] lived together for five years and had an infant son. Two days before

1

> Christmas 2005 at 1:30 p.m., Appellant arrived at the home [MVM] and his brother shared. Appellant came over to work on the family car. [EV] and [MVM] were home when Appellant arrived but [EV] left for work at 2:00 p.m. [MVM] watched television and tended to her baby until 3:00 p.m. when she went to the kitchen to prepare the evening meal. During this time, Appellant was in the garage working on the car. While [MVM] was in the kitchen, Appellant came in several times to ask her questions or play with the baby.
>
> Appellant interrupted his work on the car a third time and asked [MVM] for [EV]'s telephone number because he needed money to buy additional car parts. [MVM] went to the bedroom, got a piece of paper, wrote down the telephone number and handed it to Appellant. When [MVM] tried to leave the bedroom, Appellant produced a knife and forced her onto the bed. Appellant threatened to harm [MVM] and her child if she did not cooperate. Her pants were removed and as they struggled, Appellant dropped the knife. Appellant retrieved the knife, mounted [MVM] and partially penetrated her vagina with his penis. Appellant then had oral contact with her vagina before once again sexually assaulting her by inserting his penis in her vagina. According to [MVM's] statement given to police, Appellant also manipulated her vagina with his fingers. After Appellant ejaculated, he threatened to kill [MVM] and her son if she told anyone what happened.

(Exhibit H, Opening Brief at 3-4 (citations omitted).) (Exhibits to the Answer, Doc. 11, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

On January 5, 2006, Petitioner was indicted (Exhibit A) in Maricopa County Superior Court on three counts of sexual assault and single counts of sexual abuse, kidnapping and aggravated assault. Petitioner proceeded to trial. In the midst of trial an Amended Indictment (Exhibit D) was filed to clarify that the purpose for the kidnapping was sexual assault, not ransom or as a shield or hostage. (*See* Exhibit B, Motion to Amend; and Exhibit C, M.E. 9/8/6.)

Petitioner was convicted as charged. (Exhibit E, M.E. 9/13/6.) On November 9, 2006, Petitioner was sentenced to consecutive sentences of 10.5 years on each of the three sexual assaults, and concurrent sentences of 3, 10.5, and 7.5 years on the sexual abuse, kidnapping, and aggravated assault sentences, resulting in an effective sentence of 31.5 years. (Exhibit F, Sentence 11/9/6; Exhibit J, Mem. Dec. at 3-4.)

**C. PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a Notice of Direct Appeal (Exhibit G), and counsel filed an Opening Brief (Exhibit H) arguing denial of his right to be present during jury selection and reading of the preliminary instructions to the jury, and errors in calculating presentence incarceration credits. On May 13, 2008, the Arizona Court of Appeals affirmed the convictions, and modified the sentences to increase the presentence incarceration credits from 295 days to 317 days, and affirmed as modified, the sentences.

Petitioner then sought review by the Arizona Supreme Court (Exhibit K). On October 29, 2008, the Arizona Supreme Court filed its Order dated October 28, 2008, denying review (Exhibit P). On December 2, 2008, the Arizona Court of Appeals issued its Mandate, dated November 28, 2008 (Exhibit Q).

**D. PROCEEDINGS ON POST-CONVICTION RELIEF**

On November 14, 2008, Petitioner filed his Notice of Post-Conviction Relief (PCR), dated November 12, 2008 (Exhibit M). Petitioner simultaneously filed a *pro se* PCR Petition (Exhibit N) and Affidavit in Support (Exhibit O).

Counsel was appointed, but eventually filed a Notice of Completion of Review (Exhibit R) evidencing an inability to find an issue for review. Petitioner then filed a *pro per* Petition for Post Conviction Relief (Exhibit T). That Petition was dismissed with leave to amend for failure to provide a required certification. (Exhibit U, M.E. 9/14/10.) Petitioner then filed his Amended PCR Petition (Exhibit V), asserting a claim of ineffective assistance of trial counsel in advising Petitioner on a rejected plea offer. On December 3, 2010, the PCR Court denied the Petition on the merits. (Exhibit Y, M.E. 12/2/10.)

In a Petition for Review filed December 9, 2010 (Exhibit Z) Petitioner then sought review by the Arizona Court of Appeals. In an Order filed September 20, 2012 (Exhibit DD), that court summarily denied review.

Petitioner then sought review by the Arizona Supreme Court in a Petition filed

3

October 4, 2012 (Exhibit EE). In an Order filed December 12, 2013 (Exhibit FF), the Arizona Supreme Court summarily denied review.

Petitioner then filed a Petition for Writ of Certiorari (Exhibit GG) with the United States Supreme Court. In an Order filed on October 7, 2013 (Exhibit HH), that Court summarily denied the Petition.

### E. LOSS OF PETITIONER'S LEGAL PAPERS

Petitioner avows in his Petition that on September 15, 2013 he was moved from one prison facility to another, and in the process his legal files were misplaced. (Petition, Doc. 1 at 11.) Petitioner concedes the files were finally returned to him on September 17, 2014. (*Id.* at 11; *Id.* at Appendix C, Inmate Property Receipt.)

In the interim, Petitioner attempted to regain his legal files by submitting various administrative requests on November 3, 4, and 10, and December 19, 2013, January 24 and February 19, 2014. (*Id.* at Appendix B, Grievances.)

### F. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 12, 2015 (Doc. 1). The Petition reflects that it was placed in the prison mail system on the same date. (Doc. 1 at 11.) Petitioner's Petition asserts the following two grounds for relief:

> 1) Petitioner was denied his constitutional right to be present at all stages of the criminal proceedings; and 2) Petitioner was denied his Sixth Amendment right to effective assistance of counsel during plea negotiations.

(Order 3/26/15, Doc. 8 at 1-2.) Petitioner argues any delinquency in filing his Petition resulted from the misplacement of his legal files. (Petition, Doc. 1 at 11.)

**Response** - On May 1, 2015, Respondents filed their Limited Answer (Doc. 11). Respondents argue the Petition is untimely, and barred by the habeas statute of limitations.

4

**Reply** - On May 18, 2015, Petitioner filed a Reply (Doc. 13). Petitioner argues that he is entitled to equitable tolling and/or a delayed start to his limitations period based upon the fact that the prison system misplaced his legal files.

### III. APPLICATION OF LAW TO FACTS

**A. TIMELINESS**

**1. One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2. Commencement of Limitations Period**

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]

Here, Petitioner's direct appeal remained pending through October 29, 2008, when the Arizona Supreme Court denied his Petition for Review. (Exhibit K.)

It is well established in the Ninth Circuit that for purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999). The rules of

---

[1] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

1 the Supreme Court of the United States, requires that a petition for a writ of certiorari be
2 filed "within 90 days after entry of the order denying discretionary review." U.S.S.Ct. R.
3 13(1). Accordingly, because Petitioner did not file a petition for a writ of certiorari, his
4 conviction became final on Tuesday, January 27, 2009, 90 days after the Arizona
5 Supreme Court denied review.

6 **State Created Impediment** – Petitioner argues that the loss of his legal files
7 constituted a state created impediment.  Section 2244(d)(1)(B) provides an alternative
8 commencement date to the limitations period of "the date on which the impediment to
9 filing an application created by State action in violation of the Constitution or laws of the
10 United States is removed, if the applicant was prevented from filing by such State
11 action."

12 Petitioner proffers nothing to suggest that the misplacing of his legal files was "in
13 violation of the Constitution or laws of the United States."  For example, although his
14 Reply uses the language of a seizure, his Petition clarifies that his files were "lost by
15 prison officials" when Petitioner "was moved from one facility to another." (Petition,
16 Doc. 1 at 11.)  Petitioner proffers nothing to suggest that the records were deliberately
17 withheld, just lost.   Negligence (assuming such existed) does not violate the
18 Constitution. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) ("injuries inflicted by
19 governmental negligence are not addressed by the United States Constitution").

20 Moreover, section 2244(d)(1)(B) is limited to impediments to "*filing an
21 application.*" Here, Petitioner's complaint is not that he could not file his habeas
22 petition, but that he did not have access to his legal materials to formulate or support his
23 claims.  *See Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (petitioner "was
24 free to file such a petition at any time," and thus erroneous state court decision was not
25 impediment).  Petitioner proffers nothing to suggest that he could not have filed his
26 application without his papers.  Petitioner's claims are not novel, or complex.  Petitioner
27 had already argued them on his own, both on direct appeal in his *pro se* Petition for
28 Review to the Arizona Supreme Court (Exhibit K) and throughout his PCR proceeding.

6

Petitioner points to no portion of his papers which were necessary for him to complete his habeas application.

Further, Petitioner proffers no explanation why he could not have secured from other resources (the trial and appellate courts, his various counsel etc.) whatever documents he needed to consult before filing his habeas application. Thus it cannot be said that Petitioner's filing was "prevented" by the lack of his files. At most, it can be said the filing was rendered more difficult.

Moreover, as determined hereinafter, Petitioner's one year was running from February 13, 2013 until February 12, 2014. His legal papers were misplaced from September 2013 until September 2014. Petitioner fails to explain how this prevented him from filing his application in the time period from February 13, 2013 to September 2013. Indeed, during that time period (on April 19, 2013), Petitioner was able to file his Petition for Writ of Certiorari (Exhibit GG).

Petitioner requests an evidentiary hearing on this issue. (Reply, Doc. 13 at 3.) But Petitioner proffers nothing to be adduced at such a hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing. *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).

Based on the foregoing, 28 U.S.C. § 2244(d)(1)(B) does not apply, and the finality of Petitioner's conviction marks the commencement of his limitations period.

**Conclusion re Commencement** - Therefore, Petitioner's one year began running on January 28, 2009 and without any tolling expired on January 27, 2010.

### 3. Timeliness Without Tolling

Petitioner's Petition (Doc. 1) was filed on January 12, 2015, and without tolling, was almost five years delinquent.

### 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

Petitioner's limitations period commenced running on January 28, 2009. Petitioner's PCR proceeding was commenced on November 14, 2008, before his limitations period began running. It remained pending until February 12, 2013, when the Arizona Supreme Court denied review. (Exhibit FF.)

Petitioner then sought certiorari review. (Exhibits GG and HH.) However, "§ 2244(d)(2) does not toll the 1–year limitations period during the pendency of a petition for certiorari." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

Thus, Petitioner's habeas limitations period was tolled from its commencement through February 12, 2013, and commenced running again on February 13, 2013, and expired one year later on February 12, 2014.

Consequently, Petitioner's habeas petition was some 11 months delinquent when it was filed on January 12, 2015.

//

//

**5. Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner argues he is entitled to equitable tolling as a result of the misplacement of his legal papers.

However, as discussed hereinabove in considering the delayed commencement for state created impediments, Petitioner fails to show that the lack of his papers made it impossible for him to timely file. Petitioner fails to show that he could not have crafted his present petition, nor a protective petition, without his papers, or that he could not have with diligence, have obtained the papers from another source. While Petitioner may have been justified for some time period in continuing to pursue the lost papers, here he waited for almost seven months between his last grievance on the issue on

February 19, 2014 and the recovery of his papers on September 17, 2014. A diligent petitioner would have sought other sources long before September 17, 2014.

Assuming *arguendo* that Petitioner he was prevented from filing his habeas petition for the time during which his prison legal files were lost, he still is not entitled to equitable tolling. Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000). Ordinarily, thirty days after elimination of a roadblock should be sufficient. *See Guillory v. Roe*, 329 F.3d 1015, 1018, n.1 (9th Cir. 2003). Here, Petitioner had recovered his papers by September 17, 2014. And yet he delayed filing his habeas petition for almost another four months, until January 12, 2015.

Petitioner argues that this Court should sanction the State for losing his file by refusing to require Petitioner to show diligence once his file was returned. (Reply, Doc. 13 at 3.) Petitioner proffers no authority for such a sanction, and the undersigned knows of none.

Moreover, such a sanction would improperly fall on not just the prison officials, nor ever the State, but upon the people protected by the State's criminal laws. In affirming on due process grounds a district court's refusal to proceed by way of default when the state delayed in responding to a habeas petition, the Seventh Circuit summarized the application of default principles in a habeas proceeding.

> A default judgment is a sanction, and a sanction should be proportionate to a wrong. Releasing a [rightfully] convicted prisoner or imposing on the state the cost and uncertainty of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction for the wrong of failing to file a timely motion for an extension of time. This thinking informs the principle that default judgments are disfavored in habeas corpus cases. Habeas corpus is a strong remedy and is therefore reserved... for serious rather than technical violations of rights.

*Blietner vs. Wellborne*, 15 F.3d 652 (7th Cir. 1994). By the same token, requiring Respondents to address the merits of a delinquent petition based on the inadvertent misplacement of Petitioner's documents, in the face of Petitioner's failure to diligently pursue filing his habeas petition before or after the misplacement, would be a disproportionate sanction.

Under these circumstances, Petitioner is not entitled to equitable tolling.

### 6. Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013). To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

### 7. Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running on February 13, 2013, and expired on February 12, 2014, making his January 12, 2015 Petition some 11 months delinquent. Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay. Consequently, the Petition must be dismissed with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).  Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, and despite Petitioner's conclusory arguments to the contrary (Reply, Doc. 13 at 4), reasonable jurists would not find it debatable whether the procedural ruling is correct.  Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed January 12, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: September 21, 2015

15-0058r RR 15 09 08 on HC.docx

James F. Metcalf
United States Magistrate Judge